OPINION
{¶ 1} Defendant-Appellant, Cooper Power Tools, Inc. (hereinafter "Cooper"), is appealing a decision of the Montgomery County Court of Common Pleas denying its motion for summary judgment and a subsequent decision by the trial court granting Plaintiff-Appellee Michelle Y. Darden's motion in limine regarding the admissibility of expert testimony at trial.
 {¶ 2} Darden began working for Apex Tool Company, a division of Cooper, sometime in the mid-1980's. Her occupation there required repetitious use of her hands and wrists. On March 8, 1996, Darden reported difficulties with her right hand to Cooper. At that time, she completed the required C-50 application form for injury claims. Darden described her physical complaints as "Performing repetitive using of right hand from tightening/loosing {sic} of bolts on Brown and Sharp Machine causing pain and tingling right and numbness of fingers and wrist periodicly {sic} shooting pain in lower arm." Additionally, on the form Darden stated that the problem was "(R) forearm tendinitis, possible CTS [Carpal Tunnel Syndrome]."
 {¶ 3} The Industrial Commission ("Commission") determined that Darden did suffer from tendinitis and the claim was certified on July 22, 1996. Darden apparently continued to experience symptoms of carpal tunnel syndrome. On June 14, 2001 she filed form C-86, the proper vehicle within the Industrial Commission to amend an earlier claim, requesting that the Commission amend the claim to include bilateral carpal tunnel syndrome. The Commission denied that amendment; Darden appealed that decision to the Montgomery County Court of Common Pleas.
 {¶ 4} On January 21, 2003, Cooper filed a motion for summary judgment based upon the "injury" versus "occupational disease" distinction. Cooper asserted that Darden's original injury complaint could not be converted into an occupational disease complaint. The trial court denied the motion for summary judgment.
 {¶ 5} The case proceeded to trial. At trial, Darden filed a motion in limine to have the trial court exclude testimony from Dr. David Randolph, M.D. Cooper proffered the content of Dr. Randolph's deposition testimony on September 24, 2003. Cooper indicated that Dr. Randolph's focus was upon Darden's alcohol abuse and its causation of her carpal tunnel syndrome. Darden's motion in limine sought to exclude any testimony surrounding the alcohol abuse. The trial court granted the motion in limine.
 {¶ 6} On September 26, 2003, the jury returned a verdict in favor of Darden. That same day, the trial court entered a judgment allowing Darden to participate in the workers' compensation system for the condition of "bilateral carpal tunnel syndrome."
 {¶ 7} Cooper now appeals the rulings on the motion for summary judgment and the motion in limine, asserting two assignments of error.
 {¶ 8} Cooper's first assignment of error:
 {¶ 9} "The trial court erred when it overruled Cooper's motion for summary judgment, and allowed Darden to allege and offer evidence of an occupational disease on appeal to court, in a workers' compensation claim filed by Darden as an injury
claim."
 {¶ 10} In its first assignment of error, Cooper contends that the trial court erred in denying its motion for summary judgment on the basis that Darden attempted to amend her initial claim from an "injury" to an "occupational disease."
 {¶ 11} Preliminarily, we note that when reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 671 N.E.2d 241, 1996-Ohio-336. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v.Cleveland City Schools Bd. of Edn. (1997), 122 Ohio App.3d 378,383, 701 N.E.2d 1023, citing Dupler v. Mansfield Journal Co.
(1980), 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187, 18 O.O.3d 354. Thus, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty.Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.
 {¶ 12} Summary judgment can be appropriately granted where (1) "there is no genuine issue as to any material fact; (2) * * * the moving party is entitled to judgment as a matter of law; and (3) * * * reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v.Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46, 8 O.O.3d 73; see, also, Civ.R. 56(C). The movant has the burden to prove that no genuine issues of material fact exist by specifically pointing to evidence in the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which show that the non-movant has no evidence to support its claims. Harless, supra; Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 622 N.E.2d 264; Civ.R. 56(C).
 {¶ 13} An employee who is injured or contracts an occupational disease in the course of employment is entitled to receive compensation for loss sustained as a result of the occupational disease or injury as provided for in the Ohio Revised Code. R.C. 4123.54(A). "Injury" in the workers' compensation context, includes "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Thus, for an injury to be compensable, the employee must establish that the injury was received in the course of and arose out of the employee's employment. See Stivison v. Goodyear Tire Rubber Co. (1997),80 Ohio St.3d 498, 499, 687 N.E.2d 458. "`All elements of the formula must be met before compensation will be allowed.'" Id. (quoting Fisher v. Mayfield (1990), 80 Ohio St.3d 275, 277,551 N.E.2d 1271). "In the course of" refers to "the time, place, and circumstances of the injury[.]" Id. (citing Fisher, supra, at 277-78). "Arising out of" refers to the "causal connection between the injury and the injured person's employment." Id. Furthermore, an injury arises out of employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work was required to be performed and the resulting injury." Fox v. Indus. Comm. (1955), 162 Ohio St. 569, 573,125 N.E.2d 1.
 {¶ 14} To contrast, an "occupational disease" is defined under R.C. 4123.01(F) as "a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general."
 {¶ 15} Courts must liberally construe the workers' compensation laws in favor of employees. See R.C. 4123.95;Bailey v. Republic Engineered Steels, Inc., 91 Ohio St.3d 38,40, 2001-Ohio-236, 741 N.E.2d 121. The Bailey court explained that liberal construction of the workers' compensation laws require courts to adopt "the most comprehensive meaning of the statutory terms[.]" Id. As the court stated, "[a] liberal construction has been defined as giving `generously all that the statute authorizes,' and `adopting the most comprehensive meaning of the statutory terms in order to accomplish the aims of the Act and to advance its purpose, with all reasonable doubts resolved in favor of the applicability of the statute to the particular case. Interpretation and construction should not result in a decision so technical or narrow as to defeat the compensatory objective of the Act.' Fulton, Ohio Workers' Compensation Law (2 Ed. 1998) 9, Section 1.7." Id.
 {¶ 16} In this case, Darden completed the C-50 form, a form proscribed for injury claims. On that form, Darden noted that she was suffering from right forearm tendinitis, "possible CTS." After her symptoms continued and allegedly progressed into carpal tunnel syndrome, Darden filed form C-86 to amend her claim to include the occupational disease of carpal tunnel syndrome. The industrial commission denied the amendment and later addition of the claim, stating that her amendment was barred by the theory of res judicata. However, the trial court allowed the claim because the Commission had been placed on notice as to the nature of the amendment, and thus a genuine issue of fact existed regarding whether she had an action to amend the claim.
 {¶ 17} We agree. As the trial court noted, the Ohio Supreme Court has stated that "[o]ccasions may arise in which an amendment may be necessary by reason of a mistake or incompleteness in the original application. In such cases an amended application or an amendment to the application may be filed." Dillon v. Dayton Press, Inc. (1983), 6 Ohio St.3d 295,299, 453 N.E.2d 566. In determining whether an amendment should be permitted, it is important if the employer and the Commission were put on notice as to the nature of the amendment. Id. The purpose of the notice requirement was noted in Clementi v. WeanUnited, Inc. (1988), 39 Ohio St.3d 342, 346, 530 N.E.2d 909, which is to "insur[e] that the proper processing agent of a workers' compensation claim receives notice of a potential claim before the continuing jurisdiction provisions of R.C. 4123.52 are involved by the tolling of the statute of limitations. Notice is imperative in that subsequent measures can be taken by the responsible party to protect its resources."
 {¶ 18} In this case, Darden did provide written notice to the commission of the specific condition of "possible CTS." We find that the allowance of the condition of carpal tunnel syndrome does not defeat the purpose for the notice requirement. Accordingly, construing the workers' compensation laws in favor of Darden, we find that a question of fact existed regarding whether Darden had an action to amend her claim.
 {¶ 19} Cooper also argues that while the Bureau of Workers' Compensation was reviewing Darden's claim for bilateral carpal tunnel syndrome, Darden filed a claim requesting that the condition, left carpal tunnel syndrome, be recognized. A district hearing officer rejected the claim and Darden failed to appeal its denial. We agree that Darden is barred from now arguing error in the denial of the claim for left carpal tunnel syndrome because she failed to appeal the denial of that condition. However, we find that issue to be moot in light of our determination in this assignment of error.
 {¶ 20} We overrule Cooper's first assignment of error.
 {¶ 21} Cooper's second assignment of error:
 {¶ 22} "The trial court erred when it granted Darden's motion in limine, and excluded the testimony of Cooper's medical expert regarding Darden's alcohol abuse, and how this alcohol abuse caused or contributed to the development of her carpal tunnel syndrome."
 {¶ 23} Cooper provided the trial court with a video of Dr. David C. Randolph, who opined that Darden's bilateral carpal tunnel syndrome was not contracted in the course of her employment with Cooper, but instead was caused by the effects of her alcohol abuse. Darden filed a motion in limine, asking the trial court to restrict that portion of Dr. Randolph's testimony concerning the alleged alcohol abuse. Darden asserted that alcoholism was not within the scope of Dr. Randolph's expertise. The trial court agreed and excluded any testimony from Dr. Randolph relating to the alcohol abuse. Cooper now asserts that Dr. Randolph's testimony fulfilled the general reliability requirements of Evid.R. 702(C), and thus should have been admitted.
 {¶ 24} A trial court has broad discretion in determining whether to admit or exclude expert testimony, and thus, we will not reverse its decision absent an abuse of discretion. State v.Jones (2000), 90 Ohio St.3d 403, 414, 739 N.E.2d 300. An abuse of discretion connotes an arbitrary, unreasonable, or unconscionable decision by the trial court. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 25} Evid.R. 702 permits a witness to testify as an expert when the following conditions are met:
 {¶ 26} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 27} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 28} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 29} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 30} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 31} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 32} Expert testimony should be admitted only if the reasoning or methodology underlying the testimony is scientifically valid. Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 611, 687 N.E.2d 735, citing Daubert v. MerrellDow Pharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786,125 L.Ed.2d 469. Furthermore, in determining the reliability, the court should consider several factors: "(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." Id.
 {¶ 33} In the underlying case, Cooper offered Dr. Randolph's testimony to support the premise that Darden's bilateral carpal tunnel syndrome was a peripheral neuropathy caused by her alcohol abuse. Under Evid.R. 702(A), an expert's testimony was needed because such matters involve issues beyond the knowledge of a layperson. To establish this, under Evid.R. 702(B), Dr. Randolph must have been qualified as an expert by his specialized knowledge, skill, experience, training or education. Dr. Randolph was an occupational physician who noted on the record during his deposition that he did not consider himself to be an "expert" in the field of alcohol abuse. Yet, despite this, his testimony could still have qualified as an "expert opinion" as to causation if he had sufficient knowledge, skill, experience, training, and education in the subject matter of his testimony. Taulbee v.Dunsky, Butler App. No. CA2003-03-059, 2003-Ohio-5988, at ¶ 16, citing Ishler v. Miller (1978), 56 Ohio St.2d 447, 453,384 N.E.2d 296 (stating that the expert witness does not need to be the best witness on the subject in order to qualify as an expert witness).
 {¶ 34} Dr. Randolph's testimony did not demonstrate that he had some degree of knowledge, skill, experience, training, or education in the field in which he sought to render this opinion.Taulbee, 2003-Ohio-5988, at ¶ 17, citing McKinney v.Schlatter (1997), 118 Ohio App.3d 328, 692 N.E.2d 1045. As the trial court noted, Dr. Randolph based his opinion upon an article, co-edited by himself, which consisted of two sentences linking alcohol abuse and carpal tunnel syndrome. The article stated that persons who abuse alcohol were "more likely to develop neuromusculoskeletal conditions of the upper extremities." As the trial court determined, the article did not conclude a causal connection, but instead named alcohol abuse as a "risk factor" in carpal tunnel syndrome. Furthermore, Dr. Randolph opined that Darden was an alcohol abuser, despite his own admission that he was not an expert on the matter. Based upon this information, we agree that the standard in Evid.R. 702(B) was not met and, therefore, the trial court did not abuse its discretion in finding that Dr. Randolph's opinion did not qualify as an expert opinion.
 {¶ 35} We note that even if the standard in Evid.R. 702(B) had been met, Dr. Randolph's testimony did not meet the standard in Evid.R. 702(C), requiring the testimony to be based on reliable, scientific, technical or other specialized information. There is no indication that Dr. Randolph's testimony was based upon any of the factors listed above. Dr. Randolph did not examine Darden and he never diagnosed Darden as an alcohol abuser. Furthermore, Dr. Randolph's opinion is based upon an article, in which he was an editor, listing alcohol abuse as a possible risk factor for the development of "neuromusculoskeletal conditions of the upper extremities." This testimony in no way indicates that his opinion is based upon reliable, scientific, technical, or other specialized knowledge. The United States Supreme Court has stated that a court does not abuse its discretion in disregarding opinion evidence that is connected to the existing data only by the bare assertion resting on the expert's authority. General Elec. Co., v. Joiner (1997),522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508.
 {¶ 36} We find that the trial court did not abuse its discretion in determining that Dr. Randolph's testimony was not reliable, scientific testimony and therefore, was not an "expert opinion" on causation. Accordingly, the trial court did not abuse its discretion in precluding the admission of such testimony.
 {¶ 37} Cooper's second assignment of error is overruled.
 {¶ 38} The judgment of the trial court is affirmed.
Brogan, J. and Wolff, J., concur.