[Cite as *State v. Medford*, 2019-Ohio-4800.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28281 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-2172 |
| | : | |
| BRIAN A. MEDFORD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of November, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

L. PATRICK MULLIGAN, Atty. Reg. No. 0016118, 28 North Wilkinson Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, Brian A. Medford, appeals from his convictions for two counts of felonious assault, with firearm specifications, and one count of improperly handling a firearm in a motor vehicle. Raising five assignments of error, Medford argues that his convictions should be vacated because the trial court admitted expert testimony that was not based on reliable scientific, technical, or other specialized information; because the evidence was insufficient to support the convictions; because the jury disregarded the weight of the evidence; because he did not receive effective assistance of counsel at trial; and because a number of errors cumulatively deprived him of a fair trial. We find that these arguments lack merit, and Medford's convictions are therefore affirmed.

## I. Facts and Procedural History

**{¶ 2}** Medford's friend, Jovon Jones, telephoned Medford on the evening of May 27, 2018, to ask him for transportation. Transcript of Proceedings 254:20-255:4 and 283:7-283:18, Dec. 11, 2018, and Jan. 9, 2019. At the time, Jones was travelling with another friend of his, Angelica Cummings, and Cummings was able to hear Medford through Jones's telephone. *Id.* at 161:9-162:18, 256:5-258:8 and 283:10-284:14. Medford apparently upset Cummings by making insulting comments about her.[1] *Id.*

**{¶ 3}** Eventually, Cummings drove Jones to a gas station on Salem Avenue in Dayton so that he could meet Medford. *Id.* at 135:6-135:23. Medford arrived first,

---

[1] Medford denied that he intended to insult Cummings, though he acknowledged making certain remarks at which she might have taken offense. Transcript of Proceedings 283:10-284:11 and 285:21-286:11.

accompanied by a passenger. *Id.* at 135:21-136:16 and 283:10-284:20. When Cummings arrived, accompanied by her minor daughter, she parked her car next to Medford's. *Id.* at 131:11-131:12 and 136:8-136:16. While Jones moved from Cummings's car to Medford's, Cummings and Medford—still seated in their cars—argued with each other. *Id.* at 136:20-137:17, 257:1-257:7 and 285:21-286:13. Medford became incensed, stepped out of his car, and retrieved a gun from the trunk.[2] *Id.* at 286:15-287:1. He then approached Cummings and extended his gun toward her through her open window. *Id.* at 137:25-138:23. At that point, Jones persuaded Medford to return to his car, but unfortunately, Jones had not convinced Medford to let the matter drop. *Id.* at 138:24-140:4, 258:19-259:15 and 288:3-290:7.

{¶ 4} As Cummings drove away, Medford fired several rounds at her car and promptly left the area. *See id.* at 290:6-290:15. Cummings returned to the gas station at once and called for police assistance. *See id.* at 140:5-141:24. Responding shortly afterward, deputies from the Montgomery County Sheriff's Office discovered that Cummings's car had two holes in its rear bumper and one hole in its left rear tire, and they recovered five shell casings from the scene.

{¶ 5} On July 9, 2018, a Montgomery County grand jury issued an indictment against Medford, charging him with the following: Counts 1 and 2, felonious assault, second degree felonies pursuant to R.C. 2903.11(A)(2) and (D)(1)(a); Count 3, improperly

---

[2] Jones and Medford testified that Cummings said something to the effect that Medford should stop insulting her "before [she] put a hole in him," and Medford testified that Cummings discretely exhibited a small gun to him at that point. Transcript of Proceedings 257:1-259:2 and 285:2-287:1. Cummings denied that she threatened Medford and that she had a gun. *Id.* at 166:4-166:16.

handling a firearm in a motor vehicle, a fourth degree felony pursuant to R.C. 2923.16(A) and (I); and Count 4, improperly handling a firearm in a motor vehicle, a fourth degree felony pursuant to R.C. 2923.16(B) and (I).[3]  Firearm specifications were attached to the two counts of felonious assault.

{¶ 6} Medford's case proceeded to a jury trial, and in the afternoon of the second day, the jury returned verdicts of guilty on all counts.  At his sentencing hearing on January 9, 2019, the trial court sentenced Medford to serve concurrent terms in prison of four years on Count 1; four years on Count 2; and 18 months on Count 3, with which Count 4 was merged.  The court further sentenced Medford to terms of three years for each of the firearm specifications, ordering as required by statute that Medford serve these terms consecutively.  Medford thus received an aggregate sentence of 10 years, with the first six years being mandatory.

{¶ 7} On January 11, 2019, the trial court filed a judgment entry of conviction. Medford timely appealed to this court on January 29, 2019.

## II. Analysis

{¶ 8} For his first assignment of error, Medford contends that:

> THE TRIAL COURT ERRED IN PERMITTING TIMOTHY McLAUGHLIN TESTIFY [sic] REGARDING BALLISTIC ANALYSIS WHEN HIS TESTIMONY FAILED TO OFFER OPINIONS BASED ON SCIENTIFIC ANALYSIS.

---

[3] We refer to the version of R.C. 2903.11 that was effective from October 17, 2017, through March 19, 2019, and to the version of R.C. 2923.16 that was effective from March 21, 2017, through September 27, 2018.

{¶ 9} Medford argues that the testimony offered by Timothy McLaughlin, a firearms examiner employed by the Miami Valley Regional Crime Laboratory, did not satisfy the requirements of Evid.R. 702(C) because the testimony "was nothing more than [McLaughlin's] own personal beliefs and feelings." Appellant's Brief 8. At trial, Medford stipulated that McLaughlin was qualified to testify as an expert and did not object to McLaughlin's testimony.

{¶ 10} Under Evid.R. 702, a witness may testify as an expert if: (1) the witness's "testimony either relates to matters beyond the knowledge or experience possessed by lay persons[,] or dispels a misconception common among lay persons"; (2) the witness "is qualified [on the basis of] specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony"; and (3) the witness's "testimony is based on reliable scientific, technical, or other specialized information." *See* Evid.R. 702(A)-(C). Testimony "report[ing] the result of a procedure, test, or experiment" may be deemed "reliable only if * * * [t]he theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles"; if the "design of the procedure, test, or experiment" genuinely "implements the [underlying] theory"; and if the "procedure, test, or experiment was conducted in a way that [should have] yield[ed] an accurate result." Evid.R. 702(C)(1)-(3).

{¶ 11} A trial court's decision on the admission of expert testimony is generally reviewed for abuse of discretion. *See, e.g., Darden v. Cooper Power Tools, Inc.*, 2d Dist. Montgomery No. 20190, 2004-Ohio-5277, ¶ 24. In this case, however, Medford did not object to the testimony during his trial, so we review the admission of the testimony only for plain error. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d

1096, ¶ 121. To make a showing of plain error, an appellant "must establish that an error occurred, that the error was obvious, and that the error affected his * * * substantial rights." (Citation omitted.) *State v. Reddix*, 8th Dist. Cuyahoga No. 107672, 2019-Ohio-2441, ¶ 7; *see also* Crim.R. 52(B). Notice "of plain error under Crim.R. 52(B) is to be taken with the utmost caution, [only in] exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 12} Timothy McLaughlin examined the five shell casings recovered by Montgomery County Sheriff's Office personnel from the scene of the shooting. During Medford's trial, McLaughlin testified that after examining the shell casings, he concluded they all were fired through the same gun. Transcript of Proceedings 247:23-249:24.

{¶ 13} Medford dismisses McLaughlin's "conclusion [as] nothing more than a personal belief based on his feelings," claiming that McLaughlin's testimony did not include "an explanation of the scientific basis or technical process he used." Appellant's Brief 10. Although neither the State's questioning of McLaughlin on direct examination nor McLaughlin's explanation of his work were above criticism, Medford misrepresents the substance of McLaughlin's testimony.

{¶ 14} For instance, referring to that part of the direct examination in which the State asked McLaughlin whether he had "compar[ed] each [of the shell casings] to each [of the others]" or whether he had "pick[ed] one and compar[ed] the others to it," Medford says that McLaughlin "explained that 'I [sic] can do any number of things,' and started comparing one to all of the others when he 'determined that I [sic] felt that they were all fired from the same firearm.' " Appellant's Brief 7, quoting Transcript of Proceedings

247:25-248:6. Medford thus suggests that McLaughlin reached his conclusion before he examined the shell casings.

{¶ 15} Instead, in answer to the State's question, McLaughlin actually testified that he could have

do[ne] any number of things. In [the] case [of these five shell casings], what [he] did was [he] just picked the first one, the one that [he] had marked "1A," and [he] put it on one side [of a comparison microscope] and * * * started comparing it to all the others. And if---and [he] determined that [he] felt that they were all fired from the same firearm. If [he] had gone through all of them and didn't feel that [way] about any number of them, [he] would have then started to compare them all to each other to try [to] figure out what [was] going on.

Transcript of Proceedings 247:25-248:9. The import of McLaughlin's testimony, of course, was that he concluded the five shell casings were fired from the same gun only after he completed his comparative examination. *Id.*

{¶ 16} Insinuating that McLaughlin's approach to the examination was haphazard, Medford adds that McLaughlin did not compare each of the five shell casings to the other four merely because McLaughlin "apparently felt confident in his belief that [all five of the casings] were fired from the same firearm."[4] Appellant's Brief 8. Yet, the validity of

---

[4] McLaughlin completed four comparisons: the first shell casing with the second shell casing; the first shell casing with the third shell casing; the first shell casing with the fourth shell casing, and the first shell casing with the fifth shell casing. *See* Transcript of Proceedings 248:2-248:5. Comparing each to all of the others would have required 10 comparisons.

McLaughlin's conclusion is unavoidable in light of the transitive property of equality. For example, if the first shell casing and the second shell casing were fired from the same gun, and if the first shell casing and the third shell casing were fired from the same gun, then the second shell casing and the third shell casing must also have been fired from the same gun. McLaughlin referred implicitly to this principle when he explained that had the shell casing marked "1A" not appeared to have been fired from the same gun as one or more of the other casings, he would have proceeded to compare each of the casings to all of the others. *See* Transcript of Proceedings 248:6-248:9.

{¶ 17} Medford also criticizes McLaughlin for presenting "no scientific or technical basis for his conclusion" that the five shell casings he examined "were fired by the same gun." Appellant's Brief 8. Yet, Medford explained that as a bullet "travels down the barrel of [a] firearm," the "rifling that's inside the barrel" leaves marks on the bullet "call[ed] lands and grooves." Transcript of Proceedings 242:11-242:18. With "a comparison microscope," McLaughlin looked for these marks as part of his examination of the shell casings, along with "the marks that [were] left behind by the firing mechanism of the gun," such as "firing pin impressions" and "breach face marks." *Id.* at 243:18-244:11. Examining the shell casings in pairs, McLaughlin used the microscope to "overlap the images [of each of the casings] so that [he] could see [whether] the markings [were] identical or not." *Id.* at 244:12-244:23. After completing his examination, McLaughlin "determined that all of [the shell casings] were fired from the same firearm."[5] *Id.* at 244:23-244:25.

---

[5] Instead of the term "shell casings," McLaughlin used the essentially synonymous term "cartridge cases." *See* Transcript of Proceedings 244:23-244:25 and 246:16-247:20.

**{¶ 18}** Additionally, Medford argues that McLaughlin's testimony improperly included hearsay, but McLaughlin did not actually reference any out-of-court statements for the purpose of proving the truth of the matter asserted. *See* Evid.R. 801(C); Transcript of Proceedings 245:11-264:24. The State asked McLaughlin to describe the process by which his examinations are peer reviewed. McLaughlin explained the process, and his explanation led to the following exchange:

THE STATE: Okay. And if you have a peer review where your reviewer says "I don't agree with this," can you issue a report of your findings?

McLAUGHLIN: Not initially. We have to search out somebody else to look at them and decide---and basically be the judge. Decide which one of us is right.

* * *

THE STATE: Okay. Now, in this * * * case, were your findings * * * peer reviewed?

McLAUGHLIN: Yes.

THE STATE: And did you have to go through [the aforementioned] tiebreaker scenario?

McLAUGHLIN: No.

THE STATE: Okay. So your peer reviewer agreed with your results, and did you then issue a report?

McLAUGHLIN: Yes.

Transcript of Proceedings 246:5-246:24. Notwithstanding the implication that the peer reviewer found, like McLaughlin, that the five shell casings were fired from the same

gun, McLaughlin did not incorporate any out-of-court statement into his testimony.

{¶ 19} In any event, Medford himself took the stand and admitted to firing a gun at Cummings's car, thereby rendering McLaughlin's testimony all but superfluous. *Id.* at 289:3-290:20. Medford's first assignment of error is overruled.

{¶ 20} We address Medford's second and third assignments of error together because they are closely related. For his second assignment of error, Medford contends that:

THE SUFFICIENCY OF THE EVIDENCE DOES NOT SUPPORT

THE APPELLANT'S CONVICTIONS.

And for his third assignment of error, Medford contends that:

THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT

OF THE EVIDENCE.

{¶ 21} In his second assignment of error, Medford argues that the State did not introduce sufficient evidence to prove that he was guilty of two counts of felonious assault because the evidence did not show that he "was aware that there was a probability that he would cause physical harm to Cummings or her daughter," and he argues that the State did not prove that he was guilty of two counts of improper handling of a firearm in a motor vehicle because he "acted in self-defense." Appellant's Brief 11 and 14. In his third assignment of error, Medford maintains that the jury returned verdicts of guilty on all counts contrary to the manifest weight of the evidence because Cummings's testimony, being "self-serving," lacked credibility; because the evidence established "that [he] aim[ed] low enough to avoid causing or attempting to cause physical harm"; and because he demonstrated that he acted in self-defense through the presentation of evidence

indicating that Cummings had threatened to shoot him, which the jury disregarded.   *See id.* at 15-21.

**{¶ 22}** Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict."   *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   On review of a challenge to a conviction based on the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "   *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 23}** By contrast, in a challenge based on the weight of the evidence, an appellate court considers not only the quantity of the evidence, but the quality of the evidence, as well.   *See State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *State v. Thigpen*, 2016-Ohio-1374, 62 N.E.3d 1019, ¶ 6 (8th Dist.). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice warranting a new trial.   *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8.   A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' "   *Hill* at ¶ 8, quoting

*Martin* at 175.

**{¶ 24}** Although the appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

**{¶ 25}** Medford was convicted of two counts of felonious assault and two counts of improperly handling a firearm. R.C. 2903.11(A)(2) prohibits any "person [from] knowingly * * * [c]aus[ing] or attempt[ing] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2923.16(A) prohibits any "person [from] knowingly discharg[ing] a firearm while in or on a motor vehicle," and R.C. 2923.16(B) prohibits any "person [from] knowingly transport[ing] or hav[ing] a loaded firearm in a motor vehicle * * * such * * * that the firearm is accessible to the operator or any passenger without leaving the vehicle." Under R.C. 2901.22(B), a "person acts knowingly, * * *, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." The intended purpose of the person's conduct is irrelevant. *Id.*

**{¶ 26}** When he took the stand, Medford admitted that while he was seated in his own car, he fired his gun at Cummings's car, which proved conclusively that he violated R.C. 2923.16(A)-(B). Furthermore, irrespective of his intentions, he was or should have been aware that by firing his gun, he could have caused physical harm to Cummings and her daughter.[6] *See State v. Shoecraft*, 2d Dist. Montgomery No. 27860, 2018-Ohio-3920, ¶ 76 (observing that "it is reasonable to assume that [a person] who fires [several] shots from a gun into a moving car with two occupants knows that there is a 'significant possibility' that more than one person could suffer physical harm as a result"). The evidence was therefore quantitatively sufficient to prove the essential elements of felonious assault pursuant to R.C. 2903.11(A)(2), and qualitatively adequate to support the jury's verdicts.

**{¶ 27}** Furthermore, the trial court instructed the jury on self-defense, as Medford requested. *See* Transcript of Proceedings 334:13-336:25. To "establish self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." (Citation omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). The test for whether a defendant's belief is

---

[6] Medford testified that he did not know that anybody other than Cummings was in her car at the time. Transcript of Proceedings 287:22-287:25. Nevertheless, the jury also heard testimony from Cummings suggesting that Medford approached Cummings's car so closely that he could not have failed to see Cummings's daughter seated in the left rear passenger's seat, or in other words, seated directly behind Cummings. *Id.* at 136:10-138:23.

"bona fide" is " 'a combined subjective and objective test.' " *See State v. Stargell*, 2d Dist. Montgomery No. 26446, 2016-Ohio-5653, ¶ 50, quoting *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997).

{¶ 28} Even if Cummings did threaten Medford, as he and Jones testified, Cummings drove away from the gas station before Medford. Given that she had made no attempt to harm Medford before leaving, the jury did not disregard the weight of the evidence by deciding that Medford lacked an objectively reasonable belief that he was in imminent danger of death or great bodily harm. For that matter, the facts precluded the possibility of Medford proving that his only means of escaping the danger posed by Cummings, if any, was through the use of deadly force; once Cummings left the gas station, Medford could not have been in any imminent danger. *See, e.g., State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990) (noting that a "defendant is privileged to use [only] that force which is reasonably necessary to repel the attack"). Medford's second and third assignments of error are overruled.

{¶ 29} For his fourth assignment of error, Medford contends that:

TRIAL COUNSEL WAS INEFFECTIVE.

{¶ 30} Here, Medford argues that his trial counsel failed to provide effective assistance, listing the purported deficiencies of counsel's performance in two categories: "Failure to Object" and "Cross-examination." Appellant's Brief 21 and 24. In the former category, Medford criticizes counsel for not objecting to Timothy McLaughlin's expert testimony; for not objecting to the testimony of Deputy David Posma of the Montgomery County Sheriff's Department; for not objecting to an unspecified number of leading questions asked of an unspecified number of witnesses; for not objecting to some, or

perhaps all, of the photographs of the crime scene introduced into evidence by the State; and for not objecting to Deputy Posma's testimony about a "subjective" photographic identification procedure, during which Cummings identified Medford as the shooter. In the latter category, Medford criticizes counsel for being "ineffective in his cross[-]examination of [an unspecified number of] key witnesses." Appellant's Brief 24.

{¶ 31} To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.). The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors prejudiced the defendant." *Id.*, citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, the defendant bears the burden to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.* at 694; *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 47. A failure to make either showing defeats the claim. *Cardenas* at ¶ 38.

{¶ 32} Medford faults his trial counsel for failing to object to testimony establishing that the five shell casings recovered by deputies were fired through the same gun; that deputies were called to the gas station on Salem Avenue for a "felonious assault

complaint"; that Cummings's car was struck by bullets; and that Medford fired a gun at Cummings's car.    Appellant's Brief 21-24.    He further faults counsel for being "ineffective in [the] cross-examination of key witnesses."   *Id.* at 24.   Yet, even if Medford were able to show that his trial counsel's conduct were so deficient that it fell outside the wide range of reasonably competent representation, Medford would still be unable to prevail on his claim of ineffective assistance because he could not show that counsel's purported errors prejudiced his case.    Medford admitted that as he was driving away from the gas station, he fired a gun at Cummings's car.   *See* Transcript of Proceedings 288:3-291:3.    Thus, Medford's own testimony provided essentially all evidence required to support his convictions.    Medford's fourth assignment of error is overruled.

{¶ 33} For his fifth assignment of error, Medford contends that:

THE CUMULATIVE ERRORS OF THE TRIAL DEPRIVED THE APPELLANT OF A FAIR TRIAL[.]

{¶ 34} Finally, Medford argues that "errors from the inception of [his] trial, including the inclusion [sic] of improper expert testimony and the improper admission of firearms testimony," deprived him of a fair trial.[7]   Medford himself, however, testified to engaging in conduct that violated R.C. 2903.11(A)(2), 2923.16(A) and 2923.16(B).   *See* Transcript of Proceedings 288:3-291:3.   In light of this testimony, Medford cannot demonstrate "a reasonable probability that the outcome of [his] trial would have been different but for the combination of the * * * errors" he lists in his brief.   (Citation omitted.)   *See State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 58.   Medford's fifth

---

[7] The "firearms testimony" provided by Timothy McLaughlin was the only "expert testimony" offered in this case.   Appellant's Brief 25.

assignment of error is overruled.

### III. Conclusion

{¶ 35} We find that the trial court did not commit plain error by admitting the expert testimony offered by Timothy McLaughlin; that the State introduced sufficient evidence to support Medford's convictions; that the jury did not clearly lose its way in reaching its verdicts; and that Medford has not shown that he was prejudiced by his trial counsel's representation. Similarly, we find that Medford has not shown that he was prejudiced as a result of the cumulative effect of the purported errors he catalogs in his brief. Therefore, Medford's convictions are affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Jans
L. Patrick Mulligan
Hon. Steven K. Dankof