[Cite as *Couch v. Dayton Pain Ctr., L.L.C.*, 2021-Ohio-1428.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JANICE COUCH, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 28891 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-1499 |
| | : | |
| DAYTON PAIN CENTER, LLC, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of April, 2021.

. . . . . . . . . . .

LOUIS C. SCHNEIDER, Atty. Reg. No. 0076588, 250 East Fifth Street, Suite 440, Cincinnati, Ohio 45202
    Attorney for Plaintiffs-Appellants

BRANT E. POLING, Atty. Reg. No. 0063378 and ZACHARY R. HOOVER, Atty. Reg. No. 0097672, 300 East Broad Street, Suite 350, Columbus, Ohio 43215
    Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Plaintiff-appellant, Janice Couch, appeals from the trial court's final order of August 5, 2020, in which the court entered judgment on her complaint in favor Defendants-appellees, Dayton Pain Center, LLC and Bhimavarapu K. Reddy, M.D. Raising two assignments of error, Couch argues that the trial court's judgment should be reversed because the court abused its discretion by refusing to admit certain deposition testimony into evidence at trial, and by informing the jury that Dr. Reddy could not be present during the trial as the result of a serious ailment. We hold that the trial court did not abuse its discretion, and the court's judgment is therefore affirmed.

## I. Facts and Procedural History

{¶ 2} On November 5, 2011, Dr. Reddy implanted a dorsal column stimulator in Couch's spine to treat her chronic back pain. Trial Transcript 347:24-348:8; Appellees' Brief 7; *see* Appellant's Brief 1. The device consisted of a battery and two wires, or "leads," which were "insert[ed] * * * into the posterior part of [Couch's] spinal canal" and delivered electricity to her spinal cord. *See* Trial Transcript at 448:5-448:25.

{¶ 3} Eventually, Couch found that the analgesic effect of the device waned, and she decided to have it removed. *See* Appellant's Brief 1; Appellees' Brief 7. Dr. Reddy removed most of the device on February 25, 2017, but one of the leads was broken. Appellant's Brief 1-2; Appellees' Brief 7. As a result, a three to four inch length of wire remained in Couch's back. Trial Transcript 487:13-488:23; *see* Appellant's Brief 2. Dr. John Harpring, a neurosurgeon in Kentucky, removed the remainder of the broken lead in March 2019. Joint Pretrial Statement 2, Apr. 20, 2020.

{¶ 4} On April 3, 2019, Couch filed a complaint against Appellees, which she later amended to add Blue Cross Blue Shield of Michigan Mutual Insurance Company as an

involuntary plaintiff.   Amended Complaint ¶ 2, Mar. 27, 2020.   Couch alleged that Dr. Reddy never informed her about the fragment of the lead in her back and that the presence of the fragment caused her to experience severe pain.   *See id.* at ¶ 12-19. Accordingly, Couch claimed that Dr. Reddy had negligently failed "to properly perform the February 2017 spinal cord stimulator removal surgery," that he had negligently failed "to inform [her] that a [portion of one of the] lead[s] * * * was left in her spine," and that he had "otherwise act[ed] negligently during the treatment of [her] back."   *Id.* at ¶ 25.   She further claimed that Dayton Pain Center, LLC, was vicariously liable under the doctrine of respondeat superior.   *Id.* at ¶ 30.

{¶ 5} With the first day of the trial approaching, Appellees deposed Dr. Harpring on June 11, 2020.   Appellees' Brief 1; *see* Appellant's Brief 2.   Appellees then filed a pretrial statement in which they listed Dr. Harpring as an expert witness and announced their intention to read his deposition testimony to the jury.   Defendants' Pretrial Statement 3, July 13, 2020.   Appellees had not, however, included Dr. Harpring in the list of expert witnesses they submitted as part of the parties' joint pretrial statement, which had already been filed.   *Id.*; Joint Pretrial Statement 5-6.

{¶ 6} Couch responded with a motion in limine on July 27, 2020.   In her motion, she argued that because Appellees had originally indicated that Dr. Harpring would testify "as a fact witness," they should be permitted to introduce only those passages of his testimony that pertained to the treatment she received from him, and that any testimony pertaining to the cause of the pain she experienced after the removal of the dorsal column stimulator, as well as the standard of care applicable to the treatment she had received from Dr. Reddy, should be excluded.   *See* Plaintiff's Motion in Limine 2-4, July 27, 2020.

{¶ 7} The trial began on July 28, 2020. Before the voir dire, the trial court and the parties conferred off the record in chambers about the motion. *See* Trial Transcript 3:10-3:23. The trial court then noted for the record that it overruled Couch's motion in limine "as a general proposition," although the court did not allow Dr. Harpring's testimony regarding the standard of care to be introduced into evidence.[1] *See* Trial Transcript 3:12-5:20 and 414:1-417:9. Couch's counsel objected to the exclusion of this testimony, arguing that any expert testimony offered by Dr. Harpring should be allowed in its entirety or excluded in its entirety. Trial Transcript 414:2-414:23.

{¶ 8} On July 31, 2020, the jury returned a verdict in favor of Appellees, and the trial court entered judgment for Appellees on August 5, 2020. Couch timely filed her notice of appeal on September 4, 2020.

## II. Analysis

{¶ 9} For her first assignment of error, Couch contends that:

THE TRIAL COURT ERRED WHEN IT DID NOT ALLOW COUCH'S TREATING PHYSICIAN TO PROVIDE TESTIMONY THAT HE WOULD HAVE INFORMED COUCH IF HE LEFT A WIRE IN HER BACK.

---

[1] During the trial, the court and the parties had a second discussion regarding Dr. Harpring's testimony, outside the presence of the jury. *See* Trial Transcript at 411:17-416:22. In the midst of the discussion, Appellees' counsel remarked that he "thought [that the court and the parties] had reached a consensus that [they would] redact the standard of care [testimony], in light of the [c]ourt's prior ruling." *Id.* at 416:12-416:22. The court stated similarly that "the prior determination on [that issue] was that [Dr. Harpring] was not going to be permitted to testify that there was a breach in the standard of care or [that there] wasn't a breach of standard of care by Dr. Reddy." *Id.* at 417:15-417:22. Thus, despite the indication that Couch's motion was overruled, the court effectively sustained the motion in part as it related to Dr. Harpring's testimony regarding the standard of care.

{¶ 10} Couch alleged in her complaint that Dr. Reddy did not conform to the standard of care by "failing to inform [her] that a [segment of one of the dorsal column stimulator] lead[s] * * * was left in her spine." Amended Complaint ¶ 25. During his deposition, Dr. Harpring answered a hypothetical question, posed by Couch's counsel, that was related to the issue. Over counsel's objection, however, the trial court did not permit the testimony to be presented to the jury. Couch argues that the court abused its discretion by excluding the testimony. Appellant's Brief 3-5.

{¶ 11} A "trial court has broad discretion in determining whether to admit or exclude evidence," including expert testimony. (Citations omitted.) *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991); *Darden v. Cooper Power Tools, Inc.*, 2d Dist. Montgomery No. 20190, 2004-Ohio-5277, ¶ 24. Unless a trial court abuses its discretion such that a party is materially prejudiced, its determination will not be reversed on appeal. *Krischbaum* at 66. The term "abuse of discretion" refers to an arbitrary, unconscionable or unreasonable decision. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Darden* at ¶ 24.

{¶ 12} During Dr. Harpring's deposition, Couch's counsel asked him whether he would inform a patient if he had "left a wire" in the patient's body after removing a device like a dorsal column stimulator. Harpring Deposition 26:18-26:23. Appellees objected to the question. *Id.* at 26:24. Having made the objection, Appellees' counsel told Dr. Harpring to answer, and Dr. Harpring said that he "guess[ed] [he] would tell" the patient. *Id.* at 26:25-27:3. Couch's counsel later asked Dr. Harpring whether "it [would] have been possible for [Couch] to [experience] pain that [was] related to having the [segment of unattached lead] in her back," and Dr. Harpring answered "[n]o." *Id.* at 28:4-29:9.

Although the trial court ultimately excluded the testimony regarding Dr. Reddy's obligation to inform Couch that a segment of wire was left in her back, the court admitted the testimony regarding the possibility that the wire had caused Couch any pain. Trial Transcript 417:10-418:14.

{¶ 13} At trial, before any of Dr. Harpring's testimony was read to the jury, the court conferred with the parties about the parts of the deposition that Appellees "propose[d] to redact." *See id.* at 412:20-413:3. Appellees' counsel reiterated that Appellees "were not seeking any standard of care opinions" and explained that they proposed to redact Dr. Harpring's statements regarding that which "patients should be told" because that information concerned the "standard of care" applicable to the treatment provided by Dr. Reddy, rather than the treatment provided by Dr. Harpring himself. *Id.* at 413:4-413:10.

{¶ 14} Couch's counsel objected, positing that Appellees were essentially being permitted to rely on Dr. Harpring as an expert witness, because the court admitted his testimony that the segment of lead in Couch's back would likely not have been the source of any pain she experienced after the removal of the dorsal column stimulator. *Id.* at 414:14-415:4. Counsel argued that Dr. Harpring's testimony about the information which should have been provided to Couch should therefore be admitted, given that testimony pertaining to the standard of care was also expert testimony. *Id.* at 414:24-415:10.

{¶ 15} In response, Appellees' counsel implicitly objected to the introduction of testimony regarding the standard of care. Referring to the off-the-record discussion in chambers on the first day of the trial, counsel indicated that he "thought [the court and the parties] had reached a consensus" that the testimony would be redacted, and he argued that the introduction of the testimony would be "inappropriate." *Id.* at 416:12-416:22.

{¶ 16} Here, Couch maintains, as she did at trial, that the trial court erred by refusing to allow the complete transcript of Dr. Harpring's testimony to be read to the jury. Appellant's Brief 9. Couch bases her argument on Civ.R. 32(A)(4), which states that "[i]f only part of a deposition is offered in evidence by a party, an adverse party may require [the] introduc[tion] [of] all of it which is relevant to the part introduced, and any party may introduce any other parts." Citing this court's opinion in *Jenkins v. Clark*, 7 Ohio App.3d 93, 454 N.E.2d 541 (2d Dist.1982), Couch observes that the rule "does not provide [a] trial court with the discretion to exclude some [parts] of [a] deposition [if] other parts are read [into the record] at trial," so long as the former "are otherwise admissible." *See* Appellant's Brief 4.

{¶ 17} In *Jenkins*, we stated that the rule "does not leave [a] trial court [with] a great deal of discretion," but we noted that a party opposed to the introduction of a deposition in its entirety has "recourse [to] appropriate objections as to relevancy or other [grounds for exclusion] as contemplated by Civ.R. 32(B)." *Jenkins* at 99. Under Civ.R. 32(B), "objection may be made * * * to [the] recei[pt] in evidence [of] any deposition or part thereof for any reason [that] would require the exclusion of the evidence if the [deponent] were then present and testifying." Dr. Harpring, being a neurosurgeon, appears to have been qualified to offer his opinion that the segment of lead in Couch's back would likely not have caused her to experience pain, but the record suggests that he was not qualified to offer his opinion about the standard of care applicable to treatment provided by Dr. Reddy.

{¶ 18} Pursuant to Evid.R. 601(B) and (E)(3), Dr. Harpring would not have been qualified to offer expert testimony about the standard of care unless he "practice[d] <u>in the same or a substantially similar specialty</u> as [Dr. Reddy]." (Emphasis added.) Evid.R.

601(E)(3) states that a "court <u>shall not</u> permit an expert in one medical specialty to testify against a health care provider in another medical specialty unless the expert shows both that the standards of care and practice in the two specialties are similar and that the expert has substantial familiarity between [sic] the specialties."   (Emphasis added.)   Dr. Harpring's specialty is neurosurgery, whereas Dr. Reddy "is board certified in pain medicine, anesthesiology, addiction medicine, critical care medicine, electrocardiography, and hospice and palliative medicine."   *See* Trial Transcript 165:15-165:25 and 522:18-524:4.

{¶ 19} Consequently, Dr. Harpring's testimony about the standard of care applicable to Dr. Reddy's treatment of Couch was subject to exclusion under Civ.R. 32(B). Yet even assuming for sake of analysis that neurosurgery is substantially similar to one or more of Dr. Reddy's specialties, the record includes no evidence showing as much. Moreover, Dr. Harpring did not actually offer a direct opinion about the standard of care governing Dr. Reddy; instead, when asked whether he would inform a patient about a length of wire left in her spine after removal of a device like a dorsal column stimulator, Dr. Harpring said merely that "[t]hat's what [he] would do," adding that he "[could]n't speak for everybody."   Harpring Deposition 27:4-27:24.

{¶ 20} Couch argues in passing that the exclusion of the testimony "was not harmless error," though she cites no authority and presents no analysis in support of this argument.   At trial, Couch took the position that her case was "about one thing," specifically, the question of whether "Dr. Reddy [told her] that she had a [segment of unattached lead] in [her] back," because "if he [did not], then [he] deviated from the appropriate standard of care."   Trial Transcript 664:14-664:17.   Emphasizing her point,

she framed the case as "just a [matter of the] credibility of the witnesses," by which she meant that "it all [came] down to what she [said] versus what Dr. Reddy [said]." *Id.* at 668:10-668:19. Thus, neither Couch nor Appellees raised any genuine dispute about the standard of care with respect to Dr. Reddy's obligation to apprise Couch of the results of the surgery he performed. Given that the parties did not dispute the legal extent of Dr. Reddy's obligation to inform Couch, we conclude that even if the trial court did err by excluding Dr. Harpring's testimony about the standard of care, any such error was harmless.

{¶ 21} We hold accordingly that the trial court did not abuse its discretion by excluding that part of Dr. Harpring's deposition testimony which related to the standard of care applicable to treatment rendered by Dr. Reddy. Couch's first assignment of error is overruled.

{¶ 22} For her second assignment of error, Couch contends that:

THE TRIAL COURT ERRED WHEN IT INFORMED THE JURY THAT REDDY HAD AN EMERGENCY HEART PROCEDURE DURING TRIAL AND COULD NOT PARTICIPATE IN TRIAL [sic] OR TESTIFY.

{¶ 23} Finally, Couch faults that the trial court for informing the jury that Dr. Reddy would not be present at trial because he was "having a heart catheterization procedure." *See* Trial Transcript 409:16-409:20. Couch argues that the court should have offered a "neutral statement regarding [Dr.] Reddy's unavailability" for trial, making no "mention of a cardiac catheterization." Appellant's Brief 13.

{¶ 24} The trial court, however, instructed the jury that it "should not read anything into [Dr. Reddy's] appearance or non-appearance," and it cautioned the jury that "the law

and [their] oath[s] as jurors required [that they] disregard sympathy and not permit it to influence [their] verdict." Trial Transcript 443:4-443:21. A jury is presumed to have followed the court's instructions. *See, e.g., Blust v. Lamar Advertising of Mobile, Inc.,* 183 Ohio App.3d 478, 2009-Ohio-3947, 917 N.E.2d 373, ¶ 32 (2d Dist.); *Googash v. Conrad,* 2d Dist. Montgomery Nos. 20184 & 20191, 2004-Ohio-5796, ¶ 19. Couch's second assignment of error is overruled.

### III. Conclusion

{¶ 25} We hold that the trial court did not abuse its discretion by refusing to admit Dr. Harpring's deposition testimony regarding the standard of care applicable to the treatment provided by Dr. Reddy. Although Dr. Harpring was qualified to offer an expert opinion with respect to the likelihood that the segment of lead left in Couch's back after Dr. Reddy removed her dorsal column stimulator caused her pain, the record did not establish that Dr. Harpring was qualified to offer an expert opinion about the standard of care. Furthermore, even if the trial court erred by refusing to admit the latter opinion testimony, any such error was harmless because the standard of care was not at issue. In addition, the trial court did not err by informing the jury that Dr. Reddy would be absent from trial because he had to undergo a heart catheterization. The trial court instructed the jury that it should not allow sympathy to influence its deliberations, and the jury is presumed to have followed the trial court's instructions. Therefore, the trial court's judgment of August 5, 2020, is affirmed.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.

Copies sent to:

Louis C. Schneider
Brant E. Poling
Zachary R. Hoover
Blue Cross Blue Shield of Michigan Mutual Ins. Co.
Hon. Timothy N. O'Connell